The next case on the calendar is Saji v. Nassau University Medical Center. Good morning, Your Honors. May I proceed? Thank you. This case, just by way of background, is an employment discrimination and retaliation case. The plaintiff is appealing the decision by the lower court in dismissing her case on summary judgment and then subsequently, with respect to the claims that remained, granting a motion for reconsideration, dismissing her remaining retaliation claim. We believe, with all due respect, that the lower court went beyond the scope of summary judgment in rendering factual determinations that are more appropriately determined by a jury, in addition to not properly effectuating the law as it relates to an inference of discrimination as well as an adverse employment action within this district. The two claims that I will focus on, and I'll start with the retaliation claim as it relates to the job posting issue. Ms. Saji alleges that she complained through prior counsel in March of 2012 that she felt that her layoff and other issues as related to her employment were discriminatory in nature. She sent a letter through her counsel. There's no dispute on the record that there was an actual complaint of discrimination under the law. Subsequent to that, she identified a job posting for her position in April. So less than a month after the complaint was made, there was a job posting by NASA University Medical Center for her position, which she expressed an interest in through her counsel. After her counsel voiced her interest in that position, that position was then pulled. NASA University Medical Center alleged that it was posted in error and she was not hired or considered for hire for that position. We allege that that, in and of itself, was retaliation. Part of the basis- Is there any evidence in the record that it was ever filled? The evidence in the record is that the full-time position at that time was not filled. Six months later, there was a full-time position filled that, admittedly, we say it was for an operating room position. My client said she was not qualified for that. However, the evidence in the record does establish that the position was, at that point, from our perspective, sort of circumvented the situation to try to avoid liability by, instead of filling that full-time position once my client said, hey, I was laid off pursuant to collective bargaining agreement, that should be my position, they filled it with per diem employees. So they essentially needed the work, had someone do the work, but in order to avoid what would clearly look like they were trying to avoid rehiring her, they filled it with per diem employees. Ms. Zink and Ms. Rorty both testified that the job posting was an accident. But that goes to intent. At the end of the day, I agree. However, I think that's, given the timing, so there's a certain, obviously with respect to the inference of discrimination, there's certain facts we can establish. An employee in an employment discrimination claim rarely can establish a denial to be completely inaccurate. You have to use the circumstantial evidence, the timing and sequence of events. But when you take out the October position, as the district court ultimately said, that's a neutral fact because your client admits she wasn't qualified for that position. When you take that fact out, aren't you then left with just the temporal proximity between the March 28th letter and this posting which the employer says was accidental? That's it? I don't think so. What am I missing? I think that's where the lower court erred in that there wasn't just that. There was facts in the evidence that the National University Medical Center, in fact, needed that work and did retain per diem employees to do that work. So it wasn't just a temporal proximity in that. Were the per diem employees full time? In other words, every day they had a per diem employee? My understanding of that is per diem is there may be a day when you need somebody, so you hire someone per diem. You don't want to maintain, you don't want to suffer the cost, rather, of a full time employee, which is much more expensive. Absolutely. Per diem, and I'm not arguing a per diem would be the same as the full time, but what I'm arguing is that when you look at the totality of the circumstances, what I believe you don't have is simply the temporal proximity, the timing. You have the timing combined with the fact that while they said it was posted in error, there are facts that would lead a reasonable juror to conclude, well, they did actually need the work done because they did use per diem subsequently to do that work. So at the end of the day now, from our perspective, it's for a jury to hear their argument, well, oops, that was an error, and we identified it after you expressed interest in the position with the facts that would lead someone to potentially reasonably conclude that that might have been motivated by a retaliatory animus and not wanting to rehire her into that position. Was there any other evidence in the record of retaliatory animus? The other evidence of retaliation goes to the other claim of retaliation, which was that she had an issue, a disciplinary issue that she was grieving that was heading towards arbitration. And she lost. She lost at arbitration. But prior to arbitration, there was a meeting whereby a settlement was reached. And this goes to the second element that we believe that the court errored. The court found that the National University Medical Center's failure to comply with the terms of that agreement and essentially backing out of that agreement did not constitute an adverse employment action. We disagree. We believe that the facts that the court should have considered, which in the court's decision, the court said that the agreement alluded to the fact that the agreement was not finalized. However, the plaintiff has steadfastly testified and stated, and there's evidence in the record, that the agreement was signed by everyone. At that meeting, it was passed around the table. Everyone signed it. It was agreed upon. But there's no signed copy in the record. There is no signed copy in the record. She asked for... She was tendered a revised copy after and decided not to sign that herself. Yes. So what happened was that on the day of the meeting, plaintiff's testimony is that everyone passed around an agreement that essentially gave her back her vacation days and pulled the discipline from her file. Everyone signed it. She asked for a copy and was told by her union representative that I'll get you a copy in the coming days. Two days after that, she, through counsel, sent that letter complaining that she felt notwithstanding that agreement and that that grievance had been resolved, there were other issues in her employment that she believed were discriminatory in nature. And subsequent to that, Nassau University Medical Center then sent a new agreement saying this is the agreement now that had a general release provision. The first one did not. And required that she sign that in order to proceed. You say everyone signed it at the March 26th agreement. Didn't your client state at her deposition that she said she saw the hospital representative sign some document, but she couldn't testify that it was the agreement? At her deposition and in her affidavit and steadfastly, she has said we passed around the document and everyone signed it. At her deposition, yes. There was one question where she was essentially put to work. Well, do you know that she signed that document? And she admittedly said she signed something, you know, but she didn't want to say unequivocally yes. But in the record, it's very clear that there was a document being passed around. That was the document everyone signed. She left there with the belief that the matter was resolved. Her attorney's letter two days later, which is in the record, reflects the fact that that agreement was reached. And the response back from NASA, I'm sorry, NASA University Medical Center's attorney does not dispute that fact. So there was enough in the record to establish that the facts that should have been accepted as true for the purpose of the motion were that the agreement had been executed. It was an agreed upon settlement. Instead, the court said it was not necessarily agreed to, that NASA University Medical Center just did not finalize that agreement, and that as a result that was not an adverse employment action. Beyond that, I think the court erred in finding that it's not an adverse employment action because it did cause her reputational damage. Instead of her having this matter expunged from her record the vacation days back, she actually had to go to a hearing, which again, for an adverse employment action under retaliation, the question is whether it's something that would reasonably dissuade an individual from making a complaint. And I think that the law is fairly clear that someone being forced to attend a disciplinary hearing in response to their complaints may well dissuade someone from making a complaint. So I think for the purposes of the law, that should have been considered an adverse action, and then as far as the timing goes, then there's a clear timing that would have established retaliation because days later, all of a sudden there was a new agreement after her complaint. Thank you. Good morning. May it please the court, my name is Nicholas Reiter, and I represent the defendant appellee in this matter, NASA University Medical Center. Your honors, the district court's decision should be affirmed for four reasons. First, this is a case where the rule of civil procedure for a motion for reconsideration worked precisely as intended. The district court commendably and correctly acknowledged the error it made when it initially overlooked plaintiff's admission that she was not qualified for the RN-4 position in defendant's operating room. Second, the plaintiff admitted that her national origin was not the reason that NASA University Medical Center disciplined her, that it deducted 10 days of her paid leave time. Third, the plaintiff couldn't identify any similarly situated individuals for her discrimination claims. And fourth, the plaintiff has collaterally stopped from challenging the legitimacy of NASA University Medical Center's disciplinary action. As to the discrimination claims, plaintiffs- Your adversary focused on the retaliation claims today, and could I just ask a question in follow-up to the argument we've just heard? I am having trouble understanding the district court's position that the decision not to execute the settlement agreement at the March 26th meeting, if such a decision was made, couldn't constitute an adverse employment decision or an adverse employment action. And as I understand it, this was an agreement that would expunge your disciplinary record. If they'd reached an agreement, signed it, and then two days later they get a letter from her lawyer saying, we believe there was discrimination in the workplace, and then they reneged on that agreement, it does seem like an adverse action to me. So what am I missing about that? Respectfully, no, Your Honor, it's not an adverse employment action. The plaintiff wasn't an employee at that time anymore. She wasn't entitled to have her 10 days of leave time- I'm sorry, when you say it was not, you mean the failure to sign? So we are accepting that allegation that an agreement was reached and then the medical center didn't sign it? No, an agreement was not reached. There's no evidence in the record of a document that was fully executed. And what the record does reflect is that the proposed settlement agreement, the document that the plaintiff is claiming was signed, which we've never seen a fully executed copy, of course, was riddled with errors. It had confusing references to the plaintiff as an M.D. She wasn't a medical doctor or anything else. It didn't even say what would be expunged. Most importantly, perhaps, it didn't say that the plaintiff and her union would actually withdraw the grievance that was pending at that time or include a global release of claims. Even if it had been executed by my client, which it wasn't, it probably wouldn't have even been enforceable for lack of mutual consideration. What happened was the vice president of human resources, Maureen Rorty, who was at the settlement talks at that time, she looked at the document and said, wait, I have to go back and refer this to in-house counsel. They looked at it, fixed the errors, put forth the mutual consideration, the withdrawal of the grievance and a global release of claims, and then they proffered it back to the plaintiff and her union, and she declined to sign. She never signed it. My client was willing to restore her 10 days, but it had to be in exchange for the bargain for mutual consideration that was at the settlement talks. Aren't we bound to accept the allegation that it was signed and then just hasn't been produced at this stage? Not when there's deposition evidence from the plaintiff, as the court pointed out earlier, that when she was shown a copy of the document that she claims was the executed settlement agreement, she admitted, I don't know if Nassau University Medical Center really signed that document. That's in the deposition. That's her sworn testimony in this matter. And if we conclude that there's no material issue as to whether the document was executed, that that's not an issue that has to go to a jury, we don't really have to decide whether it's an adverse action if the document had been signed, right? Correct, Your Honor. That's the first issue for the court's considerations, whether the plaintiff has come forward with enough evidence to create an issue of fact about even a signed document. We submit it's not. But even if this court were to decide that the plaintiff did come forward with enough evidence, which she has not, then it's still not an adverse employment action. And at best, the plaintiff then would have maybe a breach of contract claim, which she never brought. If she's claiming there's a finalized contract and that a party to the contract didn't honor its obligations there, then you sue for breach of contract. You don't have a retaliation claim under Title VII in the New York Human Rights Law. Did the medical center respond to discovery requests for copies of assigned settlement agreements, such as she's alleging was executed? It would have if there were any discovery requests, Your Honor. But the response would have been we don't have anything because there wasn't anything ever signed. And that's an important point from Your Honor because there was no deposition of anybody who was at settlement talks that day. There was no real discovery taken by the plaintiff here, for one reason or another, to shed light on the plaintiff's account of what happened. All we have in the record is the NASA University Medical Center's account of what happened. And really the error-riddled settlement agreement that the plaintiff claims was finalized is consistent with NASA University Medical Center's position that it would never have signed that thing. And respectfully, defendant submits that this Court shouldn't create a standard where, whenever settlement talks break down because of one reason or another, that it might constitute an adverse employment action. That would give almost any discharged employee a retaliation action, and that's not the intent of Title VII. If I could respond to Appellant Counsel's point about there being evidence beyond the temporal connection, the record does not support Appellant's position. It sounds like the appellant is claiming, well, they used per diem workers, and that's evidence of pretext or something of the like. Well, they were using per diem workers before the protected activity. They always used per diem workers. And importantly, there's nothing in the record to show, for example, that there was an uptick in per diem workers. There's no discovery taken on that. And what the record does reflect is that NASA University Medical Center faced approximately a $50 million budget deficit in 2011 to 2012. It laid off more than 200 people in about a four-month time span, well-documented, well-publicized financial problems. And it had to eliminate a full-time RN-IV position, not a per diem worker. It can't eliminate a per diem worker. It is actually impossible to lay off a per diem worker because they're just scheduled on an as-needed basis. Even if it was possible to lay off a per diem worker, which it isn't, there wouldn't be any financial savings for the medical center if you do that, because, again, they're just called in on an as-needed basis, and there's no evidence in the record. Is it true that the individual who made this, and there were only two people who under the rules could have been let go, and the individual who made the decision that the plaintiff should be let go was the same person who hired her 18 months earlier? Yes, Your Honor. And that's the same actor doctrine, which applies to this case. It's relevant to the discrimination claim. Because there's no reason to think that Jane Ann Zink, she was the nursing manager for staffing and budget. She was the individual who interviewed the plaintiff in person, hired her as a full-time RN-4, and then approximately 18 months had to make the decision between the plaintiff and the only other full-time RN-4, which was Esther Porter, and had to decide who are we going to lay off here. And Jane Ann Zink, in her affidavit, she testified that, well, I chose the plaintiff because the plaintiff had a disciplinary record, a disciplinary record that was upheld by an arbitrator. Again, the plaintiff can't challenge the legitimacy of that discipline now. And Esther Porter, on the other hand, had a completely clean file. So Ms. Zink had to decide who are we going to lay off. We're going to lay off the employee with disciplinary problems. And it deserves mention that Ms. Zink is white, the plaintiff is of Indian national origin, and Esther Porter is African American. So this isn't a situation where the decision maker and the person who wasn't selected for layoff, the person to whom the plaintiff is trying to say she's similarly situated to, it's not as if they were the same national origins. That further undermines any hint or notion of discriminatory animus here. Your Honors, just on the challenge to the grant of the motion for reconsideration, again, it was entirely proper by the district court because the district court made an error that it acknowledged when it ignored the plaintiff's admission that she wasn't qualified for the operating room position. That's a very technical position. I think the court can understand probably why working in an operating room might be very different than other parts of a medical center. And with that removed from the equation, then all the plaintiff had was the temporal connection. And this court has held in Kwan, in El Sayed v Hilton Hotels, that temporal connection, that might be enough for the prima facie burden, the de minimis burden. But the much higher burden to establish pretext, a temporal connection is not enough. Especially a temporal connection here to an accidental job posting that was never filled. It's undisputed that they never filled that position. And really with that removed from the equation, the defendant submits, there's no basis to challenge the district court's granting of the motion for reconsideration. I see that my time is up, so if there's no more questions, thank you for your time and attention. My client respectfully requests that the district court's decision be affirmed in all respects. I'll just very briefly touch on a couple things. Number one, with respect to the agreement, I disagree that if the court deems that for the purposes of summary judgment motion, it has to accept plaintiff's facts that the agreement was fully executed as true. In fact, again, for the purpose of the motion, that it still would not be an adverse employment action. I think the Wanamaker case from the circuit 108F3D462 is controlling on that where even if someone is not an employee, a former employee can still assert a retaliatory adverse actions where it could impact future prospects to sully their reputation, etc. Which obviously here, having to go forward to an arbitration where ultimately was determined that she engaged in conduct that she disputes that she did, it did have that effect, and it does have that effect, and it has- What is it that you want? You'd be satisfied if they just simply removed from her file that there was a disciplinary action? I think at that time, certainly plaintiff would have- Now I can't necessarily say for certain what the plaintiff would want, but it's not simply that issue. There are the other issues. But suppose you lose on the initial termination otherwise, that it wasn't discriminatory. What do you want? What relief would you want from the district court based on your claim that they retaliated against her because she brought the proceeding challenging her firing? Well, I think I'll break that down for the two claims. The one claim being that the ten days, I think she would be looked to be made whole, have that expunged from her record. And I'm speaking a little out of school because I'm giving my perspective on what I believe she would want. Wasn't that reduced to three in any event in the arbitration? So it's three days. Yes. Is that it? Is that what that aspect of your appeal is about? That aspect of that claim is about that and it being expunged from her record. But the position itself obviously entails, had she been properly placed into that position, it would have entitled her to the income that she would have derived from that position. You probably placed back to the position where she was let go. Yes. Even if we were to conclude, or as the district court concluded, that wasn't a discriminatory act. Yes, because I think that whether it was a discriminatory act or not, they're not alleging that she was let go because of any performance issues. They're saying she was let go as a reduction in force. No, but the reduction of the basis for choosing her for the... There were only two people under, I think, the union or seniority rules that they had to go with the first in, last in, first out. There were only two people who could have let go, she and another. And she, among the two, she had these disciplinary issues. Yes, which she disputes. What does she dispute? She had those two. She had disciplinary issues. Understood. So what does she dispute? Well, she disputes the truth of those allegations. I understand that, but at least as to one of the most significant ones, the arbitrator found against her. He just simply reduced the number of days. And that's, as you can see, Your Honor, that's in part why my focus is more on the retaliation element of things. No, but I ask you what you wanted. I mean, if I were in a district court now, I'd say, turn off the recording machine and why can't you sell this case? I don't understand what, I mean, it seems to me that you're arguing over three days back pay and something in her file. That seems to me to be the most significant thing you're arguing about and really, realistically, the most you're going to get. Well, from our perspective, it's not just those three days. It's also the position that was posted that they then pulled. Our argument is, as I stated, and I won't rehash it, that that position was posted. And there's at least a question of fact as to whether it was pulled in response to her requesting to be placed in that position. And I'll leave it at- There's nothing other than speculation to support that assertion, right? I mean, there was testimony that it was posted in error. And that's all there was. You claim that there were DMs hired after, but there were DMs hired before. Is there anything to suggest that there were per DMs hired, that they were de facto putting someone in that position? Other than your speculation. There was the timing, there was the fact that per DMs were placed in that position at that time according to my client. And I think that was in the record, she said that they filled that with per DMs. But yes, beyond that, as is not uncommon in these types of cases where you're going into the intent of the employer. Those are the types of things that are being used in this position. And I will touch on the idea of the deposition. Had we done a deposition of the actors here, even if they made the same statements, that no, that was posted in error, which is common in these types of cases. Did you make a discriminatory comment? No, I did not. That's still a matter of intent that is a question for a jury to assess credibility. So similar here, National University Medical Center, they posted this position. They left it up there until they were advised that my client was interested in it. Then they said it was an error and pulled it down. I think the back and forth here highlights the fact of why summary judgment was inappropriate because there's a question. It was posted on April 12th and she voiced interest in it around that time. When it was pulled off, that I'm not certain, but it was pulled off shortly thereafter once she expressed an interest in it. Maybe it was up for a day? It could have been. Could have been. But again, like I said, I think that highlights the factual back and forth here and the factual questions here. Highlight why there are motivations at play here that are more properly before a jury. And that's why we think the lower court erred in reaching those conclusions. Thank you. Thank you both. We'll take the matter under advisement.